**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

ELK ENERGY HOLDINGS, LLC,

          **Plaintiff,**

v.

LIPPELMANN PARTNERS, LLC, et al.,

          **Defendants,**
and

TONY KAWAGUCHI, et al.,

          **Cross-claimants,**
v.

LIPPELMANN PARTNERS, LLC, and
JASON GILBERT,

          **Cross-defendants.**

Case No. 22-1057-DDC-KGG

---

<u>**MEMORANDUM AND ORDER**</u>

**I.      Procedural Background**

In Februrary 2022, plaintiff Elk Energy Holdings, LLC, filed a Complaint for

Interpleader under Fed. R. Civ. P. 22 and Declaratory Judgment against defendants Lippelmann

Partners, LLC and its members.  Doc. 1.  It asks the court to issue a judgment declaring who—

either Lippelmann Partners or its individual members—has the right to oil lease revenue, the

property at issue in the Interpleader.  *Id.* at 8.

On May 12, 2022, members of Lippelmann Partners—Tony Kawaguchi; Luke Hofacker;

Rajinikanth Gurusankarnath; Ron Hellwig; Raphael Ospina; Curtis McGhee; xSeed, LLC;

Robert C. Gregg and Christine L. Gregg Trust; Jerry Davis; Investar Ventures, LLC;

Cottonwood Resources, LLC; Banman Lippelmann, LLC; Philip Whitmore; Kim Wohlhuter; and Jewel Tankard[1]—filed a Crossclaim against Lippelmann Partners and its Chairman, Jason Gilbert.  Doc. 24.  This Crossclaim alleges that defendants Lippelmann Partners and Mr. Gilbert breached their duties of good faith and fair dealing and committed common law fraud.  *Id.* at 5–6 (Cross-cl. ¶¶ 15–17, 22–25).  This Crossclaim also asks the court to enjoin these defendants from invoking any arbitration clause or forum selection clause found in Lippelmann Partners' Operating Agreement.  *Id.* (Cross-cl. ¶¶ 18–21).

On May 23, 2022, defendant Lippelmann Partners filed a Motion to Dismiss plaintiff Elk Energy's claims for interpleader and declaratory judgment (Doc. 71) and the crossclaims asserted against it (Doc. 24).  Doc. 27.  Plaintiff Elk Energy responded (Doc. 32) and member cross-claimants responded (Doc. 33).  Defendant Lippelmann Partners replied (Doc. 40).  At that point, defendant's Motion to Dismiss (Doc. 27) was fully briefed and ripe for decision.

But, on November 22, 2022, the member cross-claimants filed an Amended Crossclaim against defendants Lippelmann Partners and Jason Gilbert.  Doc. 51.  Like their original Crossclaim, this claim alleges violations of the duty of good faith and fair dealing and common law fraud.  *Id.* at 5–6.  It also requests the same injunctive relief.  *Id.*  In response to this Amended Crossclaim, defendants Lippelmann Partners and Jason Gilbert filed a Joint Motion to Dismiss or Alternatively to Compel Arbitration.  Doc. 59.

The Amended Crossclaim (Doc. 51) supersedes the original Crossclaim (Doc. 24).  *See Franklin v. Kansas Dep't of Corr.*, 160 F. App'x 730, 734 (10th Cir. 2005) ("An amended complaint supersedes the original complaint and renders the original complaint of no legal

---

[1]     This group of members—comprised of individual members of Lippelmann Partners LLC—are defendants to Elk Energy's interpleader claim (Doc. 71) and cross-claimants on the Crossclaim against defendants Lippelmann Partners and Jason Gilbert (Docs. 24, 51).

effect.").  And so, defendants' more recent Motion to Dismiss (Doc. 59) filed in response to Doc. 51) supersedes part of their earlier Motion to Dismiss (Doc. 27).  Plaintiff Elk Energy responded (Doc. 60), cross-claimants also responded (Doc. 61), and defendants replied (Doc. 62).

Defendants' second Motion to Dismiss (Doc. 59) moves to dismiss both the interpleader claim (Doc. 71) and the Amended Crossclaim (Doc. 51), but substantively only addresses the Amended Crossclaim.  Thus, the court, in this Order, addresses arguments from the first Motion to Dismiss (Doc. 27) that moves to dismiss Elk Energy's Complaint (Doc. 71), and the responsive briefing.  Then, it addresses arguments from the second Motion to Dismiss (Doc. 59) that moves to dismiss the Crossclaim (Doc. 51).

Also before the court is member cross-claimants' Motion for Preliminary Injunction. Doc. 34.  This motion asks to enjoin crossclaim defendant Lippelmann Partners from seeking to enforce specific portions of Lippelmann Partners' Operating Agreement and amendments.  *Id.* The member cross-claimants filed a Memorandum in Support (Doc. 35), and defendant Lippelmann Partners responded (Doc.  41).  This issue is fully briefed.

Finally, in January 2023, defendant Lippelmann Partners moved to stay the case.  Doc. 56.  It requested the stay because members of Lippelmann Partners had initiated an arbitration proceeding against defendant.  *Id.*  The court granted this Motion to Stay (Doc. 56) for good cause, and because it was unopposed.  Doc. 58.  The court stayed discovery pending rulings on the two pending motions (Docs. 27 & 34) which the court now resolves.  *See* Doc. 58.  But first this Order identifies the governing legal standards and provides a brief factual overview.

## II.    Factual Background

The court must accept plaintiff's "well-pleaded facts as true, view them in the light most favorable to [it], and draw all reasonable inferences from the facts" in its favor. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

### *Interpleader Claim*

Plaintiff Elk Energy is a Montana limited liability company with its principal place of business in Kansas. Doc. 71 at 2 (Am. Compl. ¶ 1). Defendant Lippelmann Partners is a Delaware limited liability company with its principal place of business in Colorado. *Id.* at 2 (Am. Compl. ¶ 2). The remaining defendants are individual members of Lippelmann Partners including individuals and LLCs. *Id.* at 2–5. (Am. Compl. ¶¶ 3–23).[2]

Plaintiff operates an oil and gas lease (the "Lippelmann Lease") in Thomas County, Kansas. *Id.* at 6 (Am. Compl. ¶ 27). Defendant owns an 85% working interest in the Lippelmann Lease. *Id.* (Am. Compl. ¶ 28). Plaintiff, as operator of the Lippelmann Lease, oversees production of hydrocarbons from the lease, and sells those hydrocarbons to a purchaser. *Id.* at 6–7 (Am. Compl. ¶ 30). Plaintiff then distributes a portion of the proceeds of these sales to defendant Lippelmann Partners. *Id.*

The story of the current dispute really begins when Jason Gilbert, Chairman of Lippelmann Partners, sold membership interests in Lippelmann Partners—membership interests

---

[2]     On March 22, 2023, the court ordered plaintiff to show cause to demonstrate subject matter jurisdiction. Doc. 63. In response, plaintiff asked the court to allow it to amend its Complaint to invoke jurisdiction under 28 U.S.C. § 1335. Doc. 64. The court allowed plaintiff to do so (Doc. 70), then plaintiff filed an Amended Complaint (Doc. 71).

Because the amended jurisdictional allegations don't influence the motions pending before the court—cross-claimants' Motion for Preliminary Injunction (Doc. 34) and defendants' Motions to Dismiss (Docs. 27 & 59)—the court decides these issues on the papers filed before the Amended Complaint (Doc. 71). The court applies the briefing that the parties submitted on these pending motions to the claims plaintiff reasserted in its Amended Complaint (Doc. 71).

"tied to a purported ownership investment in the Lippelmann Lease."  *Id.* at 6 (Am. Compl. ¶ 29).  The members of Lippelmann Partners believe that they own working interests in the Lippelmann Lease.  *Id.*  Plaintiff understands that membership works like this:  plaintiff distributes the Lippelmann Lease's net revenue interest to Lippelmann Partners, then Lippelmann Partners pays its members a portion of the profits based on their initial investment.  *Id.* at 7 (Am. Compl. ¶ 31).

In 2021, the Securities and Exchange Commission began investigating Jason Gilbert about various investment opportunities he had sold to investors.  *Id.* (Am. Compl. ¶ 32).  Members of Lippelmann Partners began to worry that Mr. Gilbert was defrauding them by embezzling funds received from the Lippelmann Lease.  *Id.* (Am. Compl. ¶ 33).  In February 2022, members contacted plaintiff about their concerns.  *Id.*  They requested that plaintiff suspend their working interests in the lease pending an investigation and audit of Mr. Gilbert and Lippelmann Partners.  *Id.* (Am. Compl. ¶ 34).

Individual members believe they are working interest owners in the Lippelman Lease.  *Id.* (Am. Compl. ¶ 35).  Their demands that plaintiff place the lease revenue in suspense exposed plaintiff, potentially to multiple liability.  *Id.*  Faced with this concern, plaintiff filed this action to interplead Lippelmann Partners' net revenue interest received from selling the January 2022 hydrocarbons from the Lippelmann Lease (and the following months).  *Id.* at 8 (Am. Compl. ¶¶ 36–37).  Plaintiff asks the court to decide whether it should hold Lippelmann Partners' net revenue interest in suspense pending an investigation and audit or, instead, distribute the revenue to Lippelmann Partners.  *Id.* (Am. Compl. ¶ 37).

More specifically, plaintiff seeks a judgment declaring the relevant rights and obligations of the members of Lippelmann Partners, and their rights to revenue from Lippelmann Partners'

working interest in the Lippelmann Lease. *Id.* (Am. Compl. ¶ 37.b.). Plaintiff asserts that once the court decides who is entitled to the disputed balance, plaintiff will transfer the balance to the entitled party. *Id.* (Am. Compl. ¶ 37.c.). After that transfer, plaintiff requests a declaratory judgment discharging it "from any potential liability or obligations for payment of [Lippelmann Partners'] share of revenue for the Lippelmann Lease for January 2022 and subsequent months to follow to all named [d]efendants in this action." *Id.* at 9 (Am. Compl. ¶ 37.d.). Finally, plaintiff asks the court to award costs—including reasonable attorneys' fees—and deduct them from the funds in trust under 28 U.S.C. § 2201. *Id.* (Am. Compl. ¶ 37.e.).

### *Crossclaim*

Defendant Jason Gilbert owns a controlling share of the voting interests of Lippelmann Partners, LLC. Doc. 51 at 2 (Am. Cross-cl. ¶ 3). Throughout 2021, defendant Gilbert and the other members of the LLC disagreed about Mr. Gilbert's use of the LLC's funds and his failure to distribute a proportionate share of income to the LLC's members. *Id.* (Am. Cross-cl. ¶ 4).

Defendant Gilbert solicited investments from cross-claimant members to join Lippelmann Partners, LLC based on representations that the LLC would generate revenue from the oil lease. *Id.* (Am. Cross-cl. ¶ 5). Defendant Gilbert induced many, if not all, cross-claimants to join as a member of Lippelman Partners, LLC without providing a copy of the Operating Agreement. *Id.* at 4 (Am. Cross-cl. ¶ 12). Likewise, he didn't disclose any controversies surrounding him, his management of related or unrelated entities, or any anticipated chargeback of legal fees to Lippelmann Partners, LLC. *Id.* Also, he didn't inform any investors of the Operating Agreement's arbitration clause or forum selection clause. *Id.* He also didn't inform the investors of provisions about the addition of oil wells that may dilute the investors' interest. *Id.*

After the SEC started investigating defendant Gilbert in 2021, he assured cross-claimant Luke Hofacker that the investigation didn't relate to Lippelmann Partners. *Id.* at 3 (Am. Cross-cl. ¶ 6). Despite this assurance, defendant Gilbert charged most of his attorney fees from the SEC investigations to Lippelmann Partners. *Id.* (Am. Cross-cl. ¶ 7). Defendant Gilbert charged other personal expenses—like personal lease payments for real estate and vehicles—to Lippelmann Partners. *Id.* (Am. Cross-cl. ¶ 9). He failed to seek approval from the LLC's members for such expenses. *Id.*

By charging legal fees and other personal expenses to Lippelman Partners, defendant Gilbert denied cross-claimants their fair share of profits. *Id.* (Am. Cross-cl. ¶ 7). Again, Lippelmann Partners, LLC generates revenue from the oil interests operated by Elk Energy. *Id.* (Am. Cross-cl. ¶ 8). And under this model of operation, the LLC should have minimal internal costs—yet management, including defendant Gilbert, has withheld substantial sums from investors. *Id.*

As explained above, these disagreements over the operation of Lippelmann Partners between defendant Gilbert and its members gave rise to Elk Energy's interpleader action. But that was just the beginning of the conflict between the parties. After plaintiff Elk Energy filed its lawsuit, defendant Gilbert initiated a campaign designed to coerce cross-claimants to abandon their claims. *Id.* at 3–4 (Am. Cross-cl. ¶ 11). He has tried to amend the LLC's Operating Agreement and remove members on unfavorable terms. *Id.* Cross-claimants argue that this effort to exclude members "presents a risk of ongoing and potentially irreparable harm" to them, and thus they also ask the court for a preliminary injunction. *Id.* at 4–5 (Am. Cross-cl. ¶ 14).

III.     **Motions to Dismiss**

Defendant Lippelmann Partners filed a Motion to Dismiss plaintiff Elk Energy's claims

for interpleader and declaratory judgment (Doc. 71).  Doc. 27.  Defendant's motion asks the

court to dismiss plaintiff's claims because they are intertwined with crossclaims, which,

defendant argues, are subject to forum selection and arbitration clauses that deprive this court of

jurisdiction.  *Id.* at 6–9.  Plaintiff's response asserts that defendant's Operating Agreement (a

contract defendant entered with its members) doesn't apply to it, and thus the court maintains

jurisdiction over plaintiff's claims.  Doc. 32.  The court agrees with plaintiff, and thus denies

defendant's Motion to Dismiss (Doc. 27) in relevant part, *i.e.*, only the part moving to dismiss

plaintiff Elk Energy's interpleader claim.

Crossclaim defendants Lippelmann Partners and Jason Gilbert also filed a Motion to

Dismiss cross-claimants' "Verified Amended Crossclaim Against Lippelmann Partners, LLC and

Additional Cross Claim Defendant Jason Gilbert" (Doc. 51).  Doc. 59.  It asks the court to

dismiss the crossclaims because they are subject to Lippelmann Partners' Operating

Agreement—which includes choice of venue and arbitration provisions—or alternatively, it asks

the court to compel arbitration.  Doc. 59.  Cross-claimants argue that they have stated a plausible

claim for fraudulent inducement, and that claim precludes the court from enforcing the parties'

Operating Agreement at this motion to dismiss stage.  The court agrees with crossclaim

defendants and thus grants their Motion to Dismiss (Doc. 59) in part, *i.e.*, the part moving to

dismiss the Amended Crossclaim (Doc. 51).

A.     **Legal Standard for Motion to Dismiss**

Fed. R. Civ. P. 12(b)(6) allows a party to move the court to dismiss an action for failing

"to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  For a complaint

to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

A Rule 12(b)(6) motion to dismiss requires the court must assume that the factual allegations in the complaint are true. *Id.* But it's "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* (quoting *Twombly*, 550 U.S. at 555). And, while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, the Supreme Court has explained, simply "'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### B.      Motion to Dismiss Interpleader Claim

Defendant Lippelmann Partners moves to dismiss plaintiff's claims for interpleader and declaratory judgment (Doc. 71) for failing to state a claim and for lack of subject matter jurisdiction. Doc. 27. Defendant argues that none of Lippelmann Partners LLC's members have a direct working interest or net revenue interest in the Lippelmann Lease; instead, they have a membership in Lippelmann Partners. This means, defendant argues, these individuals—who are members of Lippelmann Partners—are subject to Lippelmann Partners' Operating Agreement (Operating Agreement). Defendant asserts that its Operating Agreement requires arbitration for

any claims between members of Lippelmann Partners and itself, and the Operating Agreement contains a forum selection clause conferring jurisdiction exclusively on the courts of New York, New York.

Defendant argues that the court lacks jurisdiction because the Operating Agreement prevents the parties from resolving any disputes subject to that Agreement anywhere except New York. It argues that plaintiff Elk Energy coordinated with cross-claimant members and used the interpleader and crossclaim mechanisms to create and present a dispute in our court. Thus, defendant moves to dismiss this action for improper forum and venue because of the forum selection clause or, alternatively, the arbitration provision in its Operating Agreement.

Plaintiff Elk Energy responds, contending that defendant's arguments for dismissal don't apply to its claims. Defendant's arguments in its Motion to Dismiss are based solely on forum selection and arbitration clauses contained in defendant Lippelmann Partners' Operating Agreement. Plaintiff isn't a party to that Operating Agreement, and so, plaintiff argues that it isn't bound by the terms. Defendant never disputes that proposition. And it offers no reason why a contract between Lippelmann Partners—the LLC—applies to disputes between plaintiff and individuals who are members of the LLC. Thus, the court concludes plaintiff is not subject to defendant's Operating Agreement's arbitration or forum selection clauses. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.").

Defendant fails to muster a meaningful response to plaintiff's motion. It presents no argument that plaintiff's Complaint fails to state a claim for Rule 22 interpleader or declaratory judgment. In short, defendant hasn't shown that plaintiff failed "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). Thus, the court denies defendant's Motion to

Dismiss (Doc. 27) in relevant part.  The court next addresses crossclaim defendants' Joint
Motion to Dismiss or Alternatively to Compel Arbitration (Doc. 59).

### C.      Motion to Dismiss Crossclaim or Compel Arbitration

Crossclaim defendants Lippelmann Partners and Jason Gilbert ask the court to dismiss
the crossclaims filed against them.[3]  Doc. 59.  Defendants argue that the court lacks jurisdiction
over these claims because the express terms of Lippelmann Partners LLC's Operating
Agreement mandate arbitration for any dispute between Lippelmann Partners and its members.[4]
If the court doesn't dismiss the Crossclaim, defendants request, alternatively, that the court stay
the case and compel arbitration.

Cross-claimants argue that they have stated a plausible claim for fraudulent inducement,
and that this claim precludes the court from enforcing the parties' Operating Agreement at this

---

[3]      In this section of the Order, the court uses the term "defendants" to refer to crossclaim defendants
Lippelmann Partners and Jason Gilbert.  It uses the term "cross-claimants" to refer to member cross-
claimants—all the parties who filed the Crossclaim (Doc. 51).

[4]      Defendants argue that this Operating Agreement makes venue in this court improper and the
Agreement's venue provision requires the court to dismiss these claims.  Relevant here, the Operating
Agreement provides:

> 11.5.    Jurisdiction.  Each Member hereby consents to the exclusive jurisdiction of the
> state and federal courts sitting in New York City, New York State, in any action on a claim
> arising out of, under or in connection with this Agreement or the transactions contemplated
> by this Agreement, provided such claim is not required to be arbitrated pursuant to Section
> 11.6.

Doc. 56-1 at 15 (Operating Agreement § 11.5).  Defendants argue that any claims asserted by cross-
claimants, members of the LLC, necessarily arise "in connection with" the Operating Agreement.  Thus,
they argue, venue is improper in the District of Kansas.  But their motion also acknowledges that "[n]o
party has moved to transfer venue."  Doc. 59 at 7.  And they don't do so here.  Instead, they ask the court
to dismiss the crossclaims under Rule 12(b)(6) because venue is improper.  Cross-claimants argue that
Rule 12(b)(6) is an improper mechanism to enforce a forum selection clause.  Because a different
provision of the Operating Agreement—its arbitration clause—deprives the court of jurisdiction and
disposes of these claims, the court doesn't reach the parties' venue arguments.

motion to dismiss stage.  Thus, cross-claimants argue, the court shouldn't dismiss their claims or compel arbitration based on the Operating Agreement.  The court address these arguments, below.

Defendant Lippelmann Partners attached a copy of the "Third Amended and Restated Limited Liability Company Operating Agreement of Lippelmann Partners LLC" (Operating Agreement) to its Motion to Stay Case (Doc. 56).[5]  *See* Doc. 56-1 at 14–15.  This document comprises the Operating Agreement the parties refer to in their briefing.

Defendants contend the Operating Agreement's arbitration provision also provides the court reason to dismiss the crossclaims.  Relevant here, the Operating Agreement contains the following arbitration provision:

> 11.6.   <u>Arbitration of Disputes.</u>  Any action to enforce or interpret this Agreement, or to resolve disputes with respect to this Agreement as between the Company and a Manager or Member, or between or among the Members, shall be settled by arbitration in accordance with the commercial rules of the American Arbitration Association in New York City, New York State.  Arbitration shall be the exclusive dispute resolution process in the State of New York or, if deemed applicable, the State of Delaware.

---

[5]     The court may consider these documents when deciding the motion without converting the motion into a summary judgment motion.  Defendants' motion asserts that the court should dismiss this action because a contract's forum selection clause and arbitration clause deprive this court of jurisdiction. The existence of a "valid forum selection clause may prohibit a federal court from exercising jurisdiction if the parties contractually agreed to litigate the matter elsewhere."  *K.R.W. Constr., Inc. v. Stronghold Eng'g Inc.*, 598 F. Supp. 3d 1129, 1135–36 (D. Kan. 2022); *see also Hagerman v. United Transp. Union*, 281 F.3d 1189, 1195 (10th Cir. 2002) ("Where . . . mandatory arbitration provisions . . . apply, the district court lacks subject matter jurisdiction over the same dispute.").

When deciding whether it has jurisdiction to decide a dispute, "a district court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts."  *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020) (citation and internal quotation marks omitted).  "The court's exercise of such discretion does not convert a Rule 12(b)(1) motion into a summary judgment motion unless resolution of the jurisdictional question is intertwined with the merits." *Id.* (citation and internal quotation marks omitted).  Here, resolving the jurisdictional question isn't intertwined with the merits.  So, the court properly can consider documents outside the pleadings without converting this motion to a summary judgment motion.

Doc. 56-1 at 15 (Operating Agreement § 11.6).  Defendants argue that under the Federal

Arbitration Act (FAA) this agreement is "valid, irrevocable, and enforceable[.]"  *See* 9 U.S.C. §

2.  Thus, they argue, this court lacks jurisdiction over the member cross-claimants' claims

against the company (defendant Lippelmann Partners) and its managing member (defendant

Jason Gilbert).

Cross-claimants respond, arguing that their fraudulent inducement claim voids

enforcement of the Operating Agreement's forum selection clause and arbitration clause, and

thus the court shouldn't dismiss their claims based on either provision.

Under Kansas law, the elements of fraudulent inducement are:

(1) [t]he defendant made false representations as a statement of existing and
material fact; (2) the defendant knew the representations to be false or made them
recklessly without knowledge concerning them; (3) the defendant made the
representations intentionally for the purpose of inducing another party to act upon
them; (4) the other party reasonably relied and acted upon the representations; (5)
the other party sustained damages by relying upon the representations.

*Stechschulte v. Jennings*, 298 P.3d 1083, 1096 (Kan. 2013) (citations omitted).  Cross-claimants

assert that defendant Gilbert induced cross-claimants to invest in and become members of

Lippelmann Partners without providing them a copy of the Operating Agreement.  Doc. 51 at 4

(Am. Cross-cl. ¶¶ 12–13).  And, cross-claimants argue, persuading them to invest without

disclosing the terms of the agreement—*i.e.*, the arbitration and choice of forum clause—amounts

to fraudulent inducement.  *Id.*

Cross-claimants contend that their Crossclaim states a plausible fraudulent inducement

claim.  Defendants don't contest this point.  Instead, defendants argue that cross-claimants'

allegation of fraudulent inducement—even if it states a plausible claim—still doesn't preclude

the court from enforcing the parties' contract—specifically, its arbitration clause—and

dismissing the case.[6]  Cross-claimants disagree.  They argue that the court should reach this preliminary issue—whether the contract is enforceable—before dismissing the case or compelling arbitration.  Each party cites *Prima Paint Corp. v. Flood & Conklin Manufacturing*, 388 U.S. 395 (1967) to support their position.

In *Prima Paint*, the Supreme Court had to determine whether a federal court or an arbitrator should "resolve a claim of 'fraud in the inducement' under a contract governed by the [FAA], where there [was] no evidence that the contracting parties intended to withhold that issue from arbitration."  *Id.* at 396–97.  It held that when "the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it.  But the [FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally."  *Id.* at 403–04.

Our Circuit has explained that *Prima Paint* "requires judicial resolution of issues that go to the 'making' of an agreement for arbitration."  *Spahr v. Secco*, 330 F.3d 1266, 1269 (10th Cir. 2003) (citing *Prima Paint Corp.*, 388 U.S. at 403–04).  The *Prima Paint* test asks whether the party bringing a fraudulent inducement claim alleges either "(1) he or she was fraudulently induced to agree to a contract containing an arbitration agreement; or (2) he or she was fraudulently induced to agree to the arbitration provision in particular."  *Id.* at 1273.  Only a claim that falls into the second category qualifies as the type a court properly can resolve—a claim about "the 'making' of an agreement to arbitrate" under the FAA.  *Id.*

Here, the Crossclaim falls into the first category—*i.e.*, it alleges fraud in the inducement of the contract *generally*.  The fraud claim—Count III of the Crossclaim—alleges that

---

[6]     Cross-claimants don't contest that they are members of Lippelmann Partners, LLC subject to the Operating Agreement, and they don't contest that the Operating Agreement contains these provisions. *See* Doc. 61.  They argue only that the Agreement is unenforceable because of crossclaim defendants' alleged fraud as described in this Order.

defendants "inducing each of the Cross-claimants to invest in Lippelmann Partners, LLC . . . through the omission of material facts as outlined above, constitutes fraud." Doc. 51 at 6 (Am. Cross-cl. ¶ 23).  And "actions of [defendant] Gilbert in charging personal expenses, and further manipulating the assets of Lippelmann Partners, LLC, as set forth in the foregoing paragraphs, also constitute common law fraud." *Id.* More specifically, it alleges that defendants didn't provide cross-claimants "a copy of the operating agreement" and thus the cross-claimants "were not informed of the provisions contained within the operating agreement purporting to compel arbitration" before investing. *Id.* at 4 (Am. Cross-cl. ¶ 12).

The court concludes that cross-claimants merely allege that defendants "fraudulently induced [them] to agree to a contract *containing an arbitration agreement*" by not providing that agreement before making a deal. *See Spahr*, 330 F.3d at 1273 (emphasis added).  These allegations—that defendants induced cross-claimants to invest without first providing them with the LLC's Operating Agreement—state "claims of fraud in the inducement of the contract generally." *Prima Paint Corp.*, 388 U.S. at 404.  In sum, the Crossclaim doesn't allege fraud in the inducement of the arbitration clause itself.  Thus, the court can't adjudicate it.  *See Spahr*, 330 F.3d at 1271 ("[A] fraudulent inducement claim that goes to the *entire contract* must be resolved by an arbitrator." (emphasis added)).

Having concluded that an arbitrator, not the court, should adjudicate the crossclaims here, the court is left with two options:  dismiss the crossclaims or compel arbitration.  Defendants ask the court to compel the claims to arbitration under 9 U.S.C. § 3 if it declines to dismiss the claims.  But as the parties have informed the court, cross-claimants already have initiated arbitration.  *See* Doc. 56-1.  The cross-claimants participating in that arbitration contend that they "reserve the right to abandon the arbitration in the event this [c]ourt rules that the arbitration

clause contained in the Operating Agreement is unenforceable." Doc. 61 at 3. As explained above, the court declines to enter that fray. That question of enforceability is one for the arbitrator. The court thus can't provide any of the relief cross-claimants seek. And as the parties already are resolving their dispute in the correct forum, the court dismisses these crossclaims.

### D.      Conclusion

The court denies the Motions to Dismiss (Docs. 27 and 59) in part and grants them in part. It denies the Motions to Dismiss to the extent they move to dismiss plaintiff Elk Energy's interpleader claim (Doc. 71). That claim survives. It grants the Motion to Dismiss (Doc. 59) to the extent it moves to dismiss cross-claimants' Amended Crossclaim (Doc. 51). Next, the court addresses the remaining pending motion in this case: cross-claimants' motion for injunctive relief.

## IV.     Motion for Preliminary Injunction

The members of Lippelmann Partners, defendants and cross-claimants here, have moved for a preliminary injunction against crossclaim defendant Lippelmann Partners. Doc. 34.[7] Cross-claimants' motion asks the court to enjoin defendant from trying to enforce specific portions of its Operating Agreement and amendments. *Id.* Defendant argues that cross-claimants haven't demonstrated any need for such extraordinary relief. The court agrees with defendant, and thus denies the injunction, for reasons it explains below.

### A.      Legal Standard for Preliminary Injunction

Federal Rule of Civil Procedure 65(a) authorizes district courts to issue preliminary injunctions. The relief afforded under Rule 65 embraces a limited purpose—a court issues a preliminary injunction "merely to preserve the relative positions of the parties until a trial on the

---

[7]        To simplify things, the Preliminary Injunction part of this Order refers to those moving members as "cross-claimants" and refers to defendant Lippelmann Partners LLC as "defendant."

merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).  The Tenth Circuit instructs that the moving party—here, cross-claimants—must satisfy four factors to deserve a preliminary injunction:  "(1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm if the injunction is not granted; (3) the balance of equities is in the moving party's favor; and (4) the preliminary injunction is in the public interest." *Verlo v. Martinez*, 820 F.3d 1113, 1126 (10th Cir. 2016) (quoting *Republican Party of N.M. v. King*, 741 F.3d 1089, 1092 (10th Cir. 2013)).  The court enjoys broad discretion to decide whether to grant a preliminary injunction.  *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (citations omitted).

"A preliminary injunction is an extraordinary remedy[.]"  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  So, the moving party must demonstrate a "'clear and unequivocal'" right to such relief.  *Petrella v. Brownback*, 787 F.3d 1242, 1256 (10th Cir. 2015) (quoting *Beltronics*, 562 F.3d at 1070).  "In general, 'a preliminary injunction . . . is the exception rather than the rule.'"  *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) (quoting *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984)).  The court concludes that movants here—cross-claimants—haven't shouldered their burden for such an extraordinary remedy.

### B.    Analysis

Cross-claimants' motion asks the court to enjoin defendant Lippelmann Partners "from seeking to enforce the purported arbitration or choice of forum clauses in the Operating Agreement of Lippelmann Partners, LLC, pending further ruling of this [c]ourt."  Doc. 35 at 5. Cross-claimants' supporting memorandum correctly recites the Circuit's four factor test for awarding a preliminary injunction.  Then, it argues that movants can show a likelihood of

success on the merits and irreparable injury that outweighs any damage the proposed injunction may cause defendant.  Defendant disagrees.  It "incorporate[s]" its arguments from its Motion to Dismiss (Doc. 27) to support its position that this case doesn't warrant a preliminary injunction.  Doc. 41.  The court evaluates the preliminary injunction factors—to the limited extent the parties address them—in subheadings i.–iv. following.

### i. Do cross-claimants show a likelihood of success on the merits of their claims?

When the requested injunctive relief alters the status quo, the relief is disfavored and requires movant to make a "'strong showing'" that it is likely to succeed on the merits and also that the balance of harms favors issuing the requested injunction.  *N. Nat. Gas Co. v. L.D. Drilling, Inc.*, 697 F.3d 1259, 1266 (10th Cir. 2012) (quoting *Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 n.1 (10th Cir. 2010)).  Here, cross-claimants' injunctive relief, among other things, would prohibit defendant from trying to enforce its Operating Agreement.  This outcome would alter the status quo.  Cross-claimants must make a strong showing that they are likely to succeed on the merits.  Cross-claimants haven't shouldered this burden.

Cross-claimants argue that "the probability of success on the underlying claim to enjoin enforcement of the choice of forum or arbitration clauses is illustrated by . . . [their] memorandum in opposition to the motion to dismiss [referring to Doc. 33], and reproduced" in their motion for injunctive relief.  Doc. 35 at 3.  Cross-claimants recite the following standard for fraudulent inducement— under Kansas law:  "(1) false representations of existing and material fact, (2) the party making the statements knew they were false or made the statements recklessly without knowledge concerning them, (3) the representations were intentionally made to induce the [claimants] to rely upon them, (4) the [claimants] reasonably relied and acted upon the statements, and (5) the [claimants] was damaged by its reliance." *FDX Supply Chain Servs., Inc.*

*v. N. Face, Inc.*, 98 F. Supp. 2d 1244, 1247 (D. Kan. 2000) (citing *Minnesota Ave., Inc. v. Automatic Packagers, Inc.*, 507 P.2d 268, 272 (1973)).  Then cross-claimants assert that "[e]ach of these elements is alleged in the cross-claim."  Doc. 35 at 4.  They argue that defendant failed "to challenge the viability of this claim in its motion under Fed. R. Civ. P. 12(b)(6)."  *Id.*  So, cross-claimants argue that they sufficiently have *alleged* a claim for fraudulent inducement.  And as support, they attach an unpublished 1989 opinion from our court denying a motion to dismiss for failure to plead fraud with particularity.  *See* Doc. 35-1 (*Ingels v. Painewebber, Inc.*, No. 88-2466, 1989 WL 47286 (D. Kan March 20, 1989)).  But on its best day, this formulation merely adds up to a strong showing that they have pleaded an adequate claim.  It doesn't do any more.  And it doesn't do much to show that they are likely to succeed on that claim.  But they don't demonstrate a likelihood of success on the merits of this claim.  In short, cross-claimants may survive a Rule 12(b)(6) motion, but they don't demonstrate a "clear and unequivocal" right to a preliminary injunction—an extraordinary remedy.  *See Petrella*, 787 F.3d at 1256; *Winter*, 555 U.S. at 24.  This first factor weighs against injunctive relief.

Because the court concludes that cross-claimants haven't established a likelihood of success on the merits, it could end the analysis here.  Nevertheless, the court briefly considers the other three requirements for a preliminary injunction.  Cross-claimants can't satisfy them either.

### ii.  Will cross-claimants suffer irreparable harm in the absence of a preliminary injunction?

To establish irreparable harm, a movant must demonstrate "'a significant risk that [the movant] will experience harm that cannot be compensated after the fact by monetary damages.'"  *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003)).  A claim of "[p]urely speculative" harm does not suffice.  *Id.*  Instead, to meet the burden, a movant must demonstrate a "'significant risk

of irreparable harm[.]'" *Id.* (quoting *Greater Yellowstone*, 321 F.3d at 1258). Wholly conclusory statements don't amount to irreparable harm. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1261 (10th Cir. 2004).

Cross-claimants contend that their Crossclaim (Doc. 24) and affidavits attached to their Memorandum in Support of Motion for Preliminary Injunction (Doc. 35) demonstrate irreparable harm. They argue these documents show that Mr. Gilbert continues to operate Lippelmann Partners to "squeeze out minority interest holders" and enforce arbitration provisions of the parties' Operating Agreement despite an alleged lack of "meeting of the minds" on those provisions. Doc. 35 at 2. The affidavits from three cross-claimants assert that Lippelmann Partners induced each one to invest without providing a copy of the Operating Agreement. So, they say, they invested without any knowledge they'd agreed to arbitration agreements or choice of venue provisions. *See* Doc. 35-2 at 2–3 (Hofacker Aff. ¶¶ 6, 9); Doc. 35-3 at 3 (Hellwig Aff. ¶¶ 3, 6); Doc. 35-4 at 2 (Banman Aff. ¶¶ 3, 6). They argue that without a preliminary injunction, defendant will force them to arbitrate "prematurely" and substantially impair their financial interests. Doc. 35 at 5. The cross-claimants, investors in Lippelmann Partners, assert that the court should decide whether defendant fraudulently induced them into investing before defendant can force them to arbitrate. But they never explain why the court can't reach that conclusion without first issuing this requested preliminary injunction.

Cross-claimants' allegations of irreparable harm are far closer to "wholly conclusory statements" than a concrete showing of irreparable harm. *See Dominion Video Satellite*, 356 F.3d at 1261. Cross-claimants' claim for fraudulent inducement is pending before the court. Preventing defendant from "attempting" to enforce the arbitration provisions of its Operating Agreement won't affect the viability of cross-claimants' fraudulent inducement claim. Cross-

claimants fail to articulate a harm that money can't compensate at the end of a lawsuit on the merits. *See RoDa Drilling Co.*, 552 F.3d at 1210 (for injunctive relief, the movant must demonstrate "a significant risk" of "harm that cannot be compensated after the fact by monetary damages" (citation and internal quotation marks omitted)). Defendant has every right to try to enforce a contract. Likewise, cross-claimants have a right to oppose that result by claiming the contract is invalid. And that, it appears, is exactly what the parties are doing. In due time, the court or an arbitration will resolve this fraudulent inducement claim on its merits. But cross-claimants haven't shown that they face irreparable harm absent court intervention in the meantime. This second factor also weighs against awarding injunctive relief.

### iii. Does the potential harm to cross-claimants outweigh potential harm defendant will sustain if the court grants a preliminary injunction?

Because cross-claimants haven't demonstrated a likelihood of success on the merits or that they'd face irreparable harm absent the requested injunctive relief, and because their memorandum makes no substantive argument about this third factor, it too weighs against injunctive relief.

### iv. Is the requested preliminary injunction adverse to the public good?

Cross-claimants assert that public interest isn't a relevant factor here. Doc. 35 at 5. They claim that is so because "no issue of public interest [was] raised in this dispute over whether Lippelmann Partners fraudulently induced, by its omission of material fact, these investors to buy in to an LLC." *Id.* While the court is skeptical about this argument, cross-claimants still have failed to carry their heavy burden on at least three of the four factors.

In sum, cross-claimants haven't shown a likelihood of success on the merits or potential irreparable harm.  Thus, they haven't shouldered their burden to deserve this extraordinary remedy.  The court thus denies cross-claimants' Motion for Preliminary Injunction (Doc. 34).

## V.   Conclusion

The court denies defendant Lippelmann Partners' Motion to Dismiss (Doc. 27) in part, as it applies to dismiss Elk Energy's Complaint for Interpleader (Doc. 71).  The court denies the remainder of defendant's Motion to Dismiss (Doc. 27) as moot because of cross-claimants' Amended Crossclaim (Doc. 51) and defendant's subsequent Motion to Dismiss (Doc. 59).

The court grants defendants' Joint Motion to Dismiss or Alternatively to Compel Arbitration (Doc. 59) in part and denies it in part.  It grants the part moving to dismiss the Amended Crossclaim (Doc. 51) and denies the part moving to dismiss Elk Energy's Complaint for Interpleader (Doc. 71).

The court also denies cross-claimants' Motion for Preliminary Injunction (Doc. 34).  Cross-claimants' motion also requests "oral argument" on the motion.  Doc. 34 at 1.  Our local rule, D. Kan. Rule 7.2, gives the court discretion to "set any motion for oral argument or hearing at the request of a party or on its own initiative."  The court finds here that the parties' papers adequately present the issues raised by the motion.  An oral argument isn't necessary or consistent with Fed. R. Civ. P. 1.  So, the court declines to set oral argument on this motion.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Dismiss (Doc. 27) is denied, as explained by this Order.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendants' Joint Motion to Dismiss or Alternatively to Compel Arbitration (Doc. 59) is granted in part and denied in part, as explained by this Order.

**IT IS FURTHER ORDERED BY THE COURT THAT** cross-claimants' Motion for

Preliminary Injunction (Doc. 34) is denied.

**IT IS SO ORDERED.**

**Dated this 31st day of May, 2023, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**