IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ELK ENERGY HOLDINGS, LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 22-1057-DDC-BGS |
| | ) |
| LIPPELMANN PARTNERS LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORNADUM & ORDER DENYING
MOTION TO SUSPEND INTERPEADER DEPOSITS**

NOW BEFORE THE COURT is the Motion to Suspend Interpleader Deposits Into the Court's Registry filed by Defendant Lippelmann Partners (Doc. 77). For the reasons set forth below, the motion is **DENIED**.

**I. Factual Background**

Plaintiff Elk Energy Holdings, LLC ("Plaintiff") operates the Lippelmann Oil and Gas Lease ("the lease"). Defendant Lippelmann Partners owns an 85% working interest in the lease. Plaintiff, as operator of the lease, oversees production of hydrocarbons from the lease, selling those hydrocarbons to a purchaser. As the lease operator, Plaintiff receives payments for hydrocarbons produced from the wells of the lease. Plaintiff then distributes a portion of the proceeds of these sales to Defendant Lippelmann Partners.

On February 28, 2022, Plaintiff filed a Complaint for Interpleader pursuant to Fed.R.Civ.P. 22 and Declaratory Judgment against Defendant Lippelmann Partners, LLC and its members ("member Defendants").[1] (Doc. 1.) Therein, Plaintiff asks the Court to enter judgment declaring

---

[1] The member Defendants consist of Tony Kawaguchi, Luke Hofacker, Rajinikanth Gurusankarnath, Ron Hellwig, Raphael Ospina, Curtis McGhee, xSeed, LLC, Robert C. Gregg and Christine L. Gregg Trust, Jerry Davis, Investar

1

whether Defendant Lippelmann Partners or the member Defendants has the right to oil lease revenue, the property at issue in the Interpleader. (*Id.* at 8.)

On March 8, 2022, Plaintiff filed an unopposed motion to deposit interpleader funds with the Court. (Doc. 5.) At the time of that filing, the amount in Plaintiff's possession was $97,908.49, with the total expected to continue to grow with receipt of each month's production revenue. (*Id.*) The District Court granted that motion on March 23, 2022, authorizing Plaintiff "to deposit the funds it currently possesses, as well as future funds owed to defendants, into the court's registry." (Doc. 7, at 2.)

On May 12, 2022, the member Defendants filed a Crossclaim against Defendant Lippelmann Partners and its Chairman, Jason Gilbert, alleging that Lippelmann Partners and Gilbert breached their duties of good faith and fair dealing and committed common law fraud. (Doc. 24, at 5-6.) The Crossclaim also seeks to have the Cross-Defendants enjoined from invoking any arbitration clause or forum selection clause in the Operating Agreement of Lippelmann Partners ("Operating Agreement"). (*Id.*, at ¶¶ 18-21.)

In May 2022, the parties reached an agreement to release $360,386.60 of the interplead funds to Defendant Lippelmann Partners. (Docs. 25, 26.) The parties also agreed that as to future distributions, approximately 85% of the undisputed funds would be paid directly to Defendant Lippelmann Partners for the purpose of allowing Gilbert to pay other investors, while the remainder would be paid into the Court's registry. (*Id.*)

On May 23, 2022, Defendant Lippelmann Partners filed a Motion to Dismiss Plaintiff's claims for interpleader as well as the crossclaims the member Defendants asserted against it (Doc. 24) based on a failure to state a claim upon which relief can be granted and lack of subject matter

---

Ventures, LLC, Cottonwood Resources, LLC, Banman Lippelmann, LLC, Philip Whitmore, Kim Wohlhuter, and Jewel Tankard.

jurisdiction.  (Doc. 27.)  Therein, Defendant Lippelmann Partners alleged that the parties are required to resolve disputes in New York federal and state courts because the forum selection clause in the Operating Agreement states that each member consented to exclusive jurisdiction in the state and federal courts of New York City, New York.  (*Id.*, at 2, 6-9.)  Both Plaintiff and the member Defendants filed responses to Defendant Lippelmann Partners' Motion to Dismiss.  (Doc. 32, 33.)

Defendant Lippelmann Partners states that it expelled the member Defendants from the entity pursuant to the Operating Agreement as a result of the member Defendants' "efforts to avoid arbitration and demanding that [Plaintiff] place [Defendant] Lippelmann Partners oil revenue in suspense."  (Doc. 77, at 5.)  According to Defendant, this was effective June 1, 2022.  (*Id.*)

Thereafter, on June 16, 2022, the member Defendants filed a Motion for Preliminary Injunction, which sought to enjoin Defendant Lippelmann Partners from seeking to enforce specific portions of Lippelmann Partners' Operating Agreement and amendments, including the arbitration clause.  (Docs. 34, 35.)

On November 22, 2022, the member Defendants filed an Amended Crossclaim against Cross-Defendants Lippelmann Partners and Gilbert, which supersedes the initial Crossclaim.  (Doc. 51.)  The Amended Crossclaim again alleges violations of the duty of good faith and fair dealing and common law fraud while requesting the same injunctive relief previously sought.  (*Id.* at 5-6.)  In response to the Amended Crossclaim, Cross-Defendants Lippelmann Partners and Gilbert filed a Joint Motion to Dismiss or Alternatively to Compel Arbitration on February 15, 2023.  (Doc. 59.)  This second Motion to Dismiss moved to dismiss both the interpleader claim and the Amended Crossclaim.  (*Id.*)

On January 3, 2023, Defendant Lippelmann Partners moved to stay this interpleader action as well as all crossclaims "because an arbitration action has been initiated and all claims pending in this matter or that could have been brought in this matter should be submitted to arbitration as

3

explained in Lippelman Partners' pending Motion to Dismiss (Doc. 27)." (Doc. 56, at 1.) This stay was granted for good cause and as unopposed when no response to the motion was filed. (Doc. 58, 1/18/23 text Order.) Discovery was stayed pending rulings on the Motion to Dismiss (Doc. 27) and the Motion for Preliminary Injunction (Doc. 34). (*Id.*)

On May 31, 2023, the District Court denied Defendant Lippelmann Partners' Motion to Dismiss (Doc. 27) but granted the portion of its Motion to Dismiss or Alternatively to Compel Arbitration (Doc. 59) that sought to dismiss the member Defendants' Amended Crossclaim (Doc. 51). (*See* Doc. 72, at 8.) These crossclaims were dismissed because the District Court found that disputes internal to Lippelmann Partners must be resolved by arbitration as outlined in the Operating Agreement. (Doc. 72, at 16 (stating that "The court thus can't provide any of the relief cross-claimants seek. And as the parties already are resolving their dispute in the correct forum, the court dismisses these crossclaims.").) In that same Order, the District Court also denied Cross-Claimants' Motion for Preliminary Injunction (Doc. 34), which had sought to enjoin Defendant Lippelmann Partners from enforcing the Operating Agreement.[2] (*See* Doc. 72, at 16.)

This case remains stayed pending the outcome of the pending New York arbitration. (Doc. 75.) As noted above, however, Plaintiff continues to deposit a portion of the lease net revenue into the Court's registry on a monthly basis. (*See* Doc. 7.) To date, 18 monthly payments have been made totaling $419,845.28 paid into the Court by Plaintiff. (Doc. 77, at 2.)

Defendant Lippelmann Partners brings the present motion to suspend these interpleader deposits. (Doc. 77.) The motion is opposed by Plaintiff (Doc. 78) and the member Defendants (Doc. 79). Defendant Lippelmann Partners has replied to these responses.[3] (Doc. 80.)

---

[2] Additional procedural history and analysis regarding these motions as contained in the District Court's Order is incorporated herein by reference. (See generally Doc. 72.)

[3] The Court notes that this reply was filed out of time, a day after it was due. In the reply, Defendant does not acknowledge this or request leave from the Court to file the reply out of time. (*See generally* Doc. 80.) Because the delay

4

**II.     Analysis.**

       Defendant Lippelmann Partners' motion seeks two types of relief:

> (1) to stop [Plaintiff's] payments into the Court's registry, consistent with the stay that has been entered; and (2) to release the funds currently held in the Court's registry. This money belongs to [Defendant] Lippelmann Partners, not the individual members, regardless of their allegations and the proper forum to resolve any disputes is in arbitration.

(Doc. 77, at 2.) Defendant further contends that, because the New York arbitration is now pending,

> any dispute that exists between the complaining members and Lippelmann Partners is in the correct forum, where it should have been submitted in the first place. Had these members followed the law in the first place, the interplead money would not have been deposited into the Court's registry. Lippelmann Partners, therefore, moves this Court for an order to release the interplead proceeds as this money would not have been suspended but for the unclean hands of the complaining members and their efforts to try and use the interpleader to resolve their complaints instead of following the express terms of the Operating Agreement.

(*Id.*, at 4-5.)

    Defendant Lippelmann Partners continues that Plaintiff's interpleader payments should be suspended because it expelled the member Defendants in June 2022 pursuant to the Operating Agreement (discussed above). (Doc. 77, at 5.) According to Defendant, "[a]t a minimum, this Court should order the payments stopped and money deposited after June 1, 2022[,] be released to [Defendant] Lippelman Partners because [Plaintiff] cannot as a matter of law face any multiple liability after the complaining members were expelled." (*Id.*) The member Defendants cast doubt on the propriety of any such expulsion though, by contending it occurred after Gilbert "orchestrated the amendment of the operating agreement" in reaction to the claims asserted by the member Defendants. (Doc. 79, at 3.)

---

in filing the reply brief was *de minimus*, the Court will consider the arguments contained therein despite Defendant not addressing the issue.

Plaintiff responds to the present motion by asserting that Defendant Lippelmann Partners' arguments constitute a "red herring." (Doc. 78, at 3.) According to Plaintiff, the fact that the member Defendants' crossclaims were dismissed pending arbitration is irrelevant because Plaintiff's interpleader action "was never dependent on the [member Defendants] pursuing cross claims." (*Id.*) Plaintiff continues that the existence of the arbitration "does nothing to change the fact that there are still competing claims" to the funds being deposited with the Court. (*Id.*) Plaintiff points to the fact that Gilbert "is still being accused of fraud and embezzlement, and his counsel's suggestion that the funds be turned over to his control raises many of the same concerns that caused [Plaintiff] to initiate this interpleader action in the first place." (*Id.*)

The member Defendants also oppose the requested suspension of the interpleader deposits because resolution of their arbitration in a timely manner "does not appear probable." (Doc. 79, at 2.) The member Defendants opine that although certain claims will be addressed in the pending New York arbitration, "that does not ultimately resolve in its entirety any claim of these Co-Defendants to all of the funds that have been interpled." (*Id.*, at 3.) They also express concerns that distributions from the funds within Defendant Lippelmann Partners' control have not been paid by Gilbert to many members from the last 15 payments. (*Id.*) As noted above, payment of other investors was the purpose of allowing 85% of the funds to go to Defendant Lippelmann Partners and Gilbert.

Plaintiff continues that Defendant's reliance on the Operating Agreement is irrelevant to Plaintiff's interpleader claim because Plaintiff "is not a party to such an operating agreement and does not (and could not) bring any claim under the Operating Agreement." (Doc. 78, at 3-4.) As such, in response to Defendant Lippelmann Partners' prior motion to dismiss, Plaintiff took no position as to the enforceability of the Operating Agreement's forum clause and arbitration clause against the member Defendants. In other words, the existence of the on-going arbitration is

6

irrelevant to Plaintiff's claims – and those are the claims that necessitated the funds being interplead. This is consistent with the holdings of the District Court, which concluded that "[P]laintiff is not subject to [D]efendant's Operating Agreement's arbitration or forum selection clauses." (Doc. 72, at 10 (citing **EEOC v. Waffle House, Inc.**, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.")).)

It is undisputed that Plaintiff is not a party to the Operating Agreement. It is also undisputed that Plaintiff admittedly takes no position as to the member Defendants' cross claims against Defendant Lippelmann Partners. The present action was brought in order for Plaintiff to protect itself from multiple liability. Defendant Lippelmann Partners replies, however, that it does not dispute Plaintiff's position or right to bring an interpleader action. (Doc. 80, at 2.) That stated, Defendant contends that Plaintiff "cannot be the straw party that allows the [member Defendants] to collect money from [Defendant] Lippelmann Partners where the Operating Agreement has an express and clear method for asserting claims and enforcing member rights." (*Id.*) According to Defendant, the member Defendants are merely using Plaintiff

> to controvert, avoid, evade, or work around the Operating Agreement. No dispute will be resolved in this Court. For the same reasons the Court stayed this matter, the same stay should be applied to the deposit of any interplead funds.

(*Id.*)

Interpleader claims are covered by Fed.R.Civ.P. 22 which provides in relevant part that:

> [p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead. Joinder for interpleader is proper even though:
>
> (A) the claims of the several claimants, or the titles on which their claims depend, lack a common origin or are adverse and independent rather than identical; or

7

(B) the plaintiff denies liability in whole or in part to any or all of the claimants.

Fed.R.Civ.P. 22.  *See also* 28 U.S.C.A. §1335.  The interpleader process has evolved over time to become an affirmative remedy to be used by a party to protect "'against multiple claimants seeking relief upon a single obligation.'"  **Wells Fargo Bank, N.A. v. Mesh Suture, Inc.**, 31 F.4th 1300, 1309 (quoting 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1701, at 574–75, 574 n.2 (4th ed. 2019)).

The Court finds that an arbitration to which Plaintiff is not a party (and is pending as a result of this Operation Agreement to which Plaintiff is not a party) is not a basis to suspend the interpleader payments being made by Plaintiff herein.  The present lawsuit, although stayed pending the New York arbitration, remains pending before the District Court.  Plaintiff has established that two or more adverse claimants may claim to be entitled to the amounts at issue.  As such, the Court sees no valid basis to suspend the interpleader deposits.  The "Motion to Suspend Interpleader Deposits to the Court's Registry" filed by Defendant Lippelmann Partners (Doc. 77) is, therefore, **DENIED**.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas, on this 9th day of November, 2023.

/S/ BROOKS G. SEVERSON
Brooks G. Severson
United States Magistrate Judge