IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ELK ENERGY HOLDINGS, LLC,**

                Plaintiff,

v.

**LIPPELMANN PARTNERS, LLC, et al.,**

                Defendants.

Case No. 22-1057-DDC-BGS

**MEMORANDUM AND ORDER**

    Fearing multiple liability, plaintiff Elk Energy Holdings, LLC initiated this interpleader action after receiving requests to halt oil-and-gas well revenue payments. Some of the members of the LLC entitled to those revenue payments asserted that the LLC's chairman was embezzling funds. The court previously stayed this case pending arbitration between a group of defendants. Those arbitration proceedings now have concluded, and it's time to find a way to the end of this action. But the pending Motion for Summary Judgment (Doc. 104) doesn't light the way because the court, for reasons explained here, concludes it must deny that motion. After explaining its reasoning, the court tries to chart a future course.

**I.**    **Background**

    Plaintiff Elk Energy Holdings operates the Lippelmann Oil and Gas Lease in Thomas County, Kansas. Doc. 71 at 6 (Am. Compl. ¶ 27).[1] Defendant Lippelmann Partners, LLC

---

[1]    Due to the scant summary judgment record, the court cites pleadings in this case to provide relevant background information.

owned an 85% working interest in the Lippelmann Lease.[2]  *Id.* (Am. Compl. ¶ 28).  Defendants[3] Tony Kawaguchi; Luke Hofacker; Rajinikanth Gurusankarnath; Ron Hellwig; Raphael Ospina; Curtis McGhee; xSeed, LLC; Robert C. Gregg and Christine L. Gregg Trust; Jerry Davis; Investar Ventures, LLC; Cottonwood Resources, LLC; Banman Lippelmann, LLC; Philip Whitmore; Kim Wohlhuter; and Jewel Tankard—collectively, the "member defendants"—were members of Lippelmann Partners and are now represented by the same counsel.  Doc. 71 at 2–5 (Am. Compl. ¶¶ 3–23); Doc. 51 at 2 (Am. Cross-cl. ¶ 3).  Plaintiff also joined five more members of Lippelmann Partners—the Venkasteswahan Trust; Stanley White; Swarnalatha Sridhar; Rhodes Lippelmann, LLC; and Philip Mosier.  Doc. 71 at 3–4 (Am. Compl. ¶¶ 8, 12, 13, 15, 16).  These defendants haven't pleaded or otherwise entered an appearance in this case.

Plaintiff initiated this interpleader action after some of the member defendants asked plaintiff "to place their interests in suspense pending investigation and audit" of Lippelmann Partners and its then-chairman, Jason Gilbert.  *Id.* at 7 (Am. Compl. ¶ 34).  These members communicated "their belief that Jason Gilbert . . . was defrauding [Lippelmann Partners'] members through the embezzlement of funds received in association with the sale of

---

[2]  It's not clear who owns this 85% interest in the Lippelmann Lease presently.  Lippelmann Partners asserts that it still owns this interest.  Doc. 104 at 3.  But its only support for this assertion is the original Complaint, *id.*, which isn't competent summary-judgment evidence, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (explaining that—at summary judgment—parties must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'" (quoting Fed. R. Civ. P. 56)).  Plus, Lippelmann Partners previously asserted that it "sold and assigned its interest in the Lippelmann Lease to Great Plains Petroleum, Inc." on February 1, 2023.  Doc. 77 at 5.  But no record evidence supports this assertion either.  In short, the summary judgment record offers zero evidence about who owns the 85% working interest in the Lippelmann Lease or when—if ever—this ownership interest was transferred to a different entity.

[3]  Some of the parties' briefing and the court's orders have referred to the member defendants as cross claimants and to Lippelmann Partners as cross defendant.  *E.g.*, Doc. 106; Doc. 107 at 1.  But the court already dismissed the Amended Crossclaim (Doc. 51) in its entirety.  Doc. 72 at 16.  So only the interpleader action (Doc. 71) remains.

hydrocarbons from the Lippelmann Lease." *Id.* (Am. Compl. ¶ 33); *see also* Doc. 51 at 3 (Am. Cross-cl. ¶ 9) (accusing Mr. Gilbert of using revenue from the Lippelmann lease for "personal lease payments for real estate and vehicles without an authorized employment agreement").

The court granted plaintiff's Motion to Deposit Interpleader Funds in the Court's Registry pending resolution of this action. Doc. 7 at 2. The parties later filed a joint motion, asking the court to release about $360,000 of the interpleaded funds to Lippelmann Partners and agreeing that plaintiff would allocate about 85.5% of the Lippelmann Lease "production which is the subject matter of this case" to Lippelmann Partners while depositing about 14.5% in the court's registry. Doc. 25 at 2. The court granted that joint motion. Doc. 26 at 2.

Meanwhile, the member defendants crossclaimed, asserting claims against Lippelmann Partners and Mr. Gilbert for breach of duty of good faith and fair dealing and common-law fraud. Doc. 51 at 5, 6 (Am. Cross-cl. ¶¶ 15–17, 22–24). Enforcing a binding arbitration provision in Lippelmann Partners' operating agreement, the court dismissed these crossclaims. Doc. 72 at 16. And the court stayed this case pending arbitration. Doc. 75 at 1.

The arbitrator released its Partial Final Award on January 13, 2025, and issued its Final Award on January 29, 2025. *See Banman Lippelmann, LLC v. Lippelmann Partners, LLC*, No. 25-cv-03655-MKV (S.D.N.Y. May 1, 2025), Doc. 1-2 [hereinafter, "PFA"], Doc. 1-3.[4] The arbitrator found for the member defendants. He found that "Lippelmann Partners frequently failed to make timely investment distributions" to the member defendants and that Mr. Gilbert "failed adequately to address" the member defendants' "inquiries with respect to such matters[.]"

---

[4] No one filed a copy of the arbitration judgment with the court. The member defendants just attached selected portions of the judgment, so the court located the judgment in the New York proceedings where the member defendants seek to confirm the arbitration award. The court properly can take judicial notice of these documents. *See Bruce v. City and County of Denver*, 57 F.4th 738, 741 n.3 (10th Cir. 2023) ("[A] federal court may take judicial notice of another court's publicly filed records if they have a direct relation to matters at issue.").

3

PFA at 3.  After plaintiff initiated this interpleader action, Mr. Gilbert "orchestrated an elaborate amendment" of Lippelmann Partners' operating agreement.  *Id.* at 4.  The amendment afforded the Lippelmann Partners board of managers "sole and absolute discretion" to expel members who satisfied any number of grounds for expulsion.  *Id.* at 4–5.  The new provisions also outlined a process to determine the redemption value of the company to buy out an expelled member's ownership share.  *Id.* at 5–6.

After Lippelmann Partners approved these amendments, Mr. Gilbert sent letters to the member defendants "threatening to expel them from [Lippelmann Partners] if they actively participated" in this interpleader action, "failed to join [Lippelmann Partners] in seeking dismissal of the action, or failed to arbitrate any claim or dispute with [Lippelmann Partners][.]"  *Id.* at 6.  After the member defendants filed crossclaims, Mr. Gilbert issued each of the member defendants a "Notice of Redemption."  *Id.*  These papers notified the member defendants of their expulsion from Lippelmann Partners, effective June 1, 2022.  *Id.*  They also informed the member defendants that Lippelmann Partners would buy back their ownership shares "for artificially low redemption values[.]"  *Id.*  The arbitrator determined that the process Lippelmann Partners had used to determine the redemption value violated the company's operating agreement because it "had already been determined" while the operating agreement required a determination of the fair market value "promptly" after the expulsion.  *Id.* at 5, 6.

The arbitrator held that Mr. "Gilbert and Lippelmann Partners breached the duty of good faith and fair dealing[.]"  *Id.* at 13.  He explained that Mr. "Gilbert wrongfully and unfairly issued Notices of Redemption to" the member defendants based on a fair market value of slightly more than $1 million.  *Id.*  Meanwhile, the arbitrator found that the actual fair market value of Lippelmann Partners was nearly $8 million.  *Id.*  The arbitrator characterized Mr. Gilbert and

Lippelmann Partners' conduct as "egregiously unfair" and concluded that they breached a duty owed to the member defendants. *Id.* at 14. He then held Mr. Gilbert and Lippelmann Partners jointly and severally liable for an award of $954,225.00, plus costs and attorney fees. *Id.* at 15.[5] The arbitrator also rejected Mr. Gilbert and Lippelmann Partners' counterclaim, which asserted that the member defendants "improperly instituted or wrongfully continued [this] interpleader action and thereby breached express terms of [Lippelmann Partners'] Operating Agreement or the implied covenant of good faith and fair dealing." *Id.* at 15.

Six months after the arbitrator entered the final award, defendant Lippelmann Partners filed a Motion for Summary Judgment (Doc. 104) in this case. It argues that Lippelmann Partners is entitled to judgment because arbitration resolved all outstanding disputes in this case. The member defendants filed a Response (Doc. 107) opposing summary judgment. They argue that issues of fact remain about the disbursement of the interpleader funds. Plaintiff didn't engage in the summary-judgment briefing, filing no response to the motion. This Order denies Lippelmann Partners' Motion for Summary Judgment (Doc. 104). It then sets out a course for the remainder of this action.

---

[5]   In light of the arbitrator's scathing memorandum, the court questions Lippelmann Partners' decision to controvert the member defendants' assertion that "the Arbitrator ruled against Lippelmann Partners on all of its claims." Doc. 107 at 4; Doc. 108 at 1 (controverting this asserted fact). Lippelmann Partners maintains that the arbitrator confirmed the expulsion of the member defendants. True, the arbitrator—in awarding damages to the member defendants—implicitly confirmed expulsion of the member defendants. *See* Doc. 100 at 2 (Joint Status Report) (explaining that the member defendants' "expulsion was upheld"). But he repeatedly emphasized that Lippelmann Partners and Mr. Gilbert "wrongfully enforc[ed] the expulsion and redemption amendment" and awarded significant damages based on their wrongful use of these provisions. PFA at 17. Plus, the arbitrator flatly rejected the only Counterclaim that Lippelmann Partners and Mr. Gilbert had asserted, explaining that it "lack[ed] any basis in fact or law and should be denied for failure of proof." *Id.* So, the court agrees with the member defendants: the arbitrator excoriated Lippelmann Partners and ruled against it on all claims.

## II.      Summary Judgment Standard

Summary judgment is appropriate where the moving party demonstrates there is "no genuine dispute" about "any material fact," and that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  This standard dictates that the court "view the evidence and make inferences in the light most favorable to the non-movant." *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)).

"An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To carry this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'" *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).  Even if the non-moving party fails to respond adequately, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'" *Kannady*, 590 F.3d at 1169 (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248–49. The specific "facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Adler*, 144 F.3d at 671).

Federal courts don't view summary judgment as a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Instead, it represents an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

### III.     Summary Judgment Analysis

Lippelmann Partners hasn't shown that it's entitled to summary judgment. That's so for two independent reasons. *First*, the arbitration proceedings didn't resolve clearly how the court should distribute the interpleader funds deposited into the court's registry before June 1, 2022. Recall that June 1, 2022, is the date when Mr. Gilbert issued redemption notices and expelled the member defendants from Lippelmann Partners. And *second*, the summary judgment record includes no evidence showing who deserves the interpleader funds deposited into the court's registry after June 1, 2022. Take those points in turn.

#### 1. Before June 1, 2022

The court initially declines to grant summary judgment because it's not clear whether— and if so, how—the arbitrator resolved competing claims to the interpleader funds deposited in the court's registry before June 1, 2022. The thrust of Lippelmann Partners' argument is that the arbitration proceedings have preclusive effect and thus preclude the member defendants from relitigating claims that those proceedings resolved. Doc. 104 at 6–10. The court agrees with the

premise of this argument. "[A] valid and final award by arbitration generally has the same effect under the rules of res judicata as a judgment of a court." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005). So what's the problem here? It's not clear that the arbitration resolved the parties' dispute to the pre-June 1 funds. *See* Doc. 100 at 2 (Joint Status Report) ("[T]here was no order by the Arbitrator as to the rights or obligations to the Interplead funds.").

In arbitration, the member defendants asserted a claim that Mr. "Gilbert breached his fiduciary duties and duty of good faith and fair dealing in procuring a disproportionately generous employment contract with Lippelmann Partners and in causing it to pay his personal and other expenses." PFA at 15. But the arbitrator declined to reach that claim because, he concluded, any relief for that claim was cumulative of the relief awarded for the Lippelmann Partners "wrongful[] and unfair[]" expulsion of the member defendants "for artificially low redemption values[.]" *Id.* It's not clear if this conclusion resolves the parties' claims to the pre-June 1 interpleader funds. At first blush, this conclusion appears to resolve plaintiff's fear of multiple liability. The Amended Complaint alleges that fraud and embezzlement were the member defendants' rationale for demanding that plaintiff suspend payments to Lippelmann Partners. *See* Doc. 71 at 7 (Am. Compl. ¶¶ 33–34). And the arbitrator's order suggested that resolving similar claims was unnecessary because any relief for them would duplicate relief already awarded.

But the member defendants assert just the opposite, arguing the arbitrator's decision implies that the pre-June 1 funds "should not be released to Lippelmann Partners, but to the other Interpleader Defendants." Doc. 107 at 7. As support, they contend that the arbitrator, by ruling against Lippelmann Partners, effectively held that any claims Lippelmann Partners made to the disputed funds are "now barred." *Id.*

8

Lippelmann Partners' reply brief wholly ignores this argument. *See generally* Doc. 108. Lippelmann Partners argues only that the arbitrator's decision means that the member defendants held no ongoing interest in the Lippelmann Lease after June 1, 2022. *Id.* at 2. Even if that characterization is correct—an issue the court needn't resolve in light of the other issues preventing summary judgment—it says nothing about which parties are entitled to the interpleader funds deposited in the court's registry before June 1. Nor does it resolve how the court should distribute those funds among any parties entitled to them. Lippelmann Partners' perfunctory briefing and wholesale disregard of the disbursement issue for pre-June 1 funds preclude summary judgment. A second issue also precludes summary judgment: Who owns— currently— the 85% interest in the Lippelmann Lease?[6]

### 2. After June 1, 2022

The summary judgment record contains no evidence about who is entitled to the interplead funds deposited after June 1, 2022. Lippelmann Partners asserts that it owns an 85% interest in the Lippelmann Lease. Doc. 104 at 3. But it cites only one source to support this assertion: the original Complaint. *See id.* (citing Doc. 1 at 6 (Compl. ¶ 28)). Even if this pleading were competent summary judgment evidence—and it's not—plaintiff filed the original Complaint on February 28, 2022. So, Lippelmann Partners hasn't offered any basis for determining who has owned the 85% interest since February 28, 2022.

Indeed, Lippelmann Partners' own filings complicate this inquiry. At one point, it asserted that it "sold and assigned its interest in the Lippelmann Lease to Great Plains Petroleum, Inc." on February 1, 2023. Doc. 77 at 5; *see also* Doc. 100 at 1 (Joint Status Report) (explaining

---

[6] The docket reflects that plaintiff submitted an interpleader deposit on June 1, 2022, as well. Because the court concludes that Lippelmann Partners doesn't deserve summary judgment, it needn't resolve now whether these funds fall into the pre-June 1 or post-June 1 category. But the court notes this potential dilemma so that defendants can address the issue later in these proceedings, if necessary.

9

that "Lippelmann Partners has attempted to convey its interests to a third party under common control").[7] But yet again, the record contains no evidence to support this transfer. The member defendants' briefing raised this issue. Doc. 107 at 2 & n.2, 5, 7. And once again, Lippelmann Partners' cursory one-and-a-half-page reply brief wholly bypassed it. *See generally* Doc. 108. It's thus unclear how the court should disburse the post-June 1 funds, too. So Lippelmann Partners isn't entitled to judgment at this juncture.

In sum, the court denies Lippelmann Partners' Motion for Summary Judgment (Doc. 104). Lippelmann Partners hasn't carried its "initial burden of production" to show that no genuine issues of material fact remain in this interpleader action. *Kannady*, 590 F.3d at 1169 (quotation cleaned up).

## IV.    Path Forward

Having denied Lippelmann Partners' Motion for Summary Judgment (Doc. 104), the court now attempts to chart a path forward. This case has sat on the court's docket for longer than three years. It's time to find a faster track to its conclusion. To chart that path, the court starts with a brief discussion of the law governing statutory interpleader.

"Interpleader is a statutory remedy that offers a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding." *In re Millennium Multiple Emp. Welfare Benefit Plan*, 772 F.3d 634, 639 (10th Cir. 2014) (quotation cleaned up). "Courts resolve an interpleader action according to a two-step process." *Primerica*

---

[7] It appears that the name of the company to whom Lippelmann Partners transferred its ownership interest is Great Plains Petroleum, LLC—not Great Plains Petroleum, Inc. *See* PFA at 11 n.3 (discussing Lippelmann Partners' efforts to sell its interest to Great Plains Petroleum, LLC). Further supporting that appearance, Great Plains Petroleum, LLC also is involved in another action against plaintiff pending before our court. *See Great Plains Petrol., LLC v. Elk Energy Holdings, LLC*, No. 25-cv-01089-EFM-BGS (D. Kan. May 6, 2025).

*Life Ins. Co. v. Frantz*, 371 F. Supp. 3d 960, 962 (D. Kan. 2019); *accord* 7 *Wright & Miller's Federal Practice & Procedure* § 1714 (3d ed. Sept. 2025 Update). "Interpleader's first step requires the court to determine whether the interpleader prerequisites are met and, if so, whether to discharge the stakeholder from further liability to the claimants." *Primerica Life Ins.*, 371 F. Supp. 3d at 962 (quotation cleaned up). "[I]nterpleader's second step involves determining the claimant's respective rights to the disputed fund." *Id.*

### A.     Step One

At step one, the court concludes that this case satisfies the requirements for statutory interpleader. Before moving to step two, the court raises a potential joinder issue and orders plaintiff to submit supplemental briefing addressing this issue.

#### 1. Interpleader Requirements

Statutory interpleader under 28 U.S.C. § 1335 has three requirements: "(1) the amount in controversy is $500.00 or more, (2) two or more diverse claimants have adverse claims of entitlement to the disputed funds, and (3) the stakeholder deposits the disputed amount into the court's registry." *Aeronautical Title & Escrow Serv., LLC v. Lions Air Skymedia AG*, 2024 WL 5704831, at *2 (W.D. Okla. Aug. 12, 2024). This case plainly satisfies the first and third requirements. Well more than $500 is at dispute. And plaintiff has deposited interpleader funds into the court's registry on an ongoing basis. *See, e.g.*, Doc. 8; Doc. 16; Doc. 28.

This case satisfies the second requirement, too. "A statutory-interpleader action requires only minimal diversity—'that is, diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be co-citizens.'" *Wells Fargo Bank, N.A. v. Mesh Suture, Inc.*, 31 F.4th 1300, 1307 (10th Cir. 2022) (quoting *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967)). Many of the member defendants are diverse, *see* Doc. 71 at 2–4 (Am. Compl. ¶¶ 4–23), thus satisfying this requirement. This case also satisfies the

adverse-claims requirement. An interpleader plaintiff must "legitimately fear[] multiple vexation directed against a single fund." 7 *Wright & Miller's Federal Practice & Procedure* § 1704. "This standard is 'especially liberal, permitting a valid interpleader action if two claimants *may* claim to be entitled to the interpleader funds, even if there is not yet a claim.'" *Aeronautical Title*, 2024 WL 5704831, at *3 (emphasis in original) (quoting *Auto Parts Mfg. Miss., Inc. v. King Constr. of Houston, LLC*, 782 F.3d 186, 194 (5th Cir. 2015)). Here, plaintiff alleges that some of the member defendants asked it to stop remitting payments to Lippelmann Partners. Doc. 71 at 7 (Am. Compl. ¶ 34). That allegation, combined with the member defendants' and Lippelmann Partners' continuing claims to the interpleader funds satisfies the low bar for the adverse-claims requirement.

The court thus concludes that this case satisfies all elements necessary for statutory interpleader. Before progressing to step two of this interpleader action, the court pauses to highlight some joinder concerns.

### 2. Joinder and Service Issues

The court has concerns about the absence of two potential claimants from this action—Philip Mosier and Great Plains Petroleum, LLC.

Start with Mr. Mosier. Plaintiff named Mr. Mosier in both the original Complaint and the Amended Complaint. *See* Doc. 1 at 1 (Compl.); Doc. 71 at 1 (Am. Compl.). Mr. Mosier, it appears, is a member of Lippelmann Partners, LLC. *See* Doc. 71 at 4 (Am. Compl. ¶ 16). But it seems that plaintiff never served Mr. Mosier. Plaintiff mailed a copy of the summons and pleading to him, but that mailing "was returned unclaimed[.]" Doc. 13 at 19–20. It's not clear how undeliverable mail can constitute proper service under the federal rules. *Cf.* Fed. R. Civ. P. 4(e)(1) (authorizing service in compliance with state law); Kan. Stat. Ann. § 60-304 (authorizing

"[s]ervice by return receipt delivery").[8] Some courts have dismissed interpleader actions under Rule 19 when a potential claimant isn't served properly. *See Wilson v. Canada Life Assurance Co.*, No. 08–CV–1258, 2009 WL 532830, at *2–12 (M.D. Pa. Mar. 3, 2009); *id.* at *3 ("In this case, a decision regarding the ownership of the life insurance policy and the rightful recipient of the proceeds of that policy would clearly impair [the unserved party's] ability to protect its asserted interest in the policy and its proceeds."); *see also Republic of Philippines v. Pimentel*, 553 U.S. 851, 861 (2008) (explaining that—in an interpleader action—a "court with proper jurisdiction may also consider *sua sponte* the absence of a required person and dismiss for failure to join").

All that said, absent input from the parties, it's premature for the court to conclude that joining (or otherwise properly serving) Mr. Mosier isn't feasible. What's more, some courts have suggested that interpleader actions may proceed "if an interpleading plaintiff opposes joinder[.]" *Gerber Life Ins. Co. v. Harris*, No. CV-23-01095-PHX-DWL, 2024 WL 1894003, at *4 (D. Ariz. Apr. 30, 2024) (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Flanders-Borden*, 11 F.4th 12, 19 (1st Cir. 2021)).

Separately, the court has similar concerns about the absence of Great Plains Petroleum, LLC from this action. If Lippelmann Partners transferred its ownership interest to Great Plains Petroleum, then Great Plains Petroleum might have a valid claim to some funds plaintiff has deposited in the court's registry. It's not clear whether Great Plains Petroleum is a required party

---

[8]     Plaintiff alternatively could have complied with Kansas state law—the state where our court occupies—or California law—where plaintiff sent Mr. Mosier's summons. *See* Fed. R. Civ. P. 4(e)(1) (permitting service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made"); Doc. 13 at 20 (showing summons mailed to Mr. Mosier at a California address). Service-by-mail requirements are stricter in California than Kansas, requiring return of an acknowledgement-of-service form to make service effective. *See* Cal. Civ. Proc. Code § 415.30. Needless to say, plaintiff's attempt at service by undeliverable mail doesn't comport with California law either.

in this case under Rule 19. *See Gerber Life Ins.*, 2024 WL 1894003, at *4 ("The Court has been unable to locate any definitive authority addressing how to proceed when, as here, a court determines that an interpleading plaintiff may have failed to name, as a defendant, one of the potential claimants to the interpleaded funds. It could be argued that the missing potential claimant is a required party under Rule 19.").

The court seeks the parties' input about this conundrum. The court thus orders plaintiff to file a supplemental brief within 21 days of this Order addressing why these issues—failing to serve Mr. Mosier and failing to join Great Plains Petroleum, LLC—don't prevent the court from granting interpleader relief. Defendants if they wish may brief this issue by filing within 14 days of plaintiff filing its supplemental brief.

### B. Step Two

Assuming the court doesn't dismiss this action, the next step in this case will involve the court directing any defendant seeking a stake in deposits in the court's registry to interplead their claims. "Ordinarily, each claimant should file an answer setting out any defenses to the interpleader action, a statement of the claim to the res in contest, and any additional claims against the stakeholder[.]" 7 *Wright & Miller's Federal Practice & Procedure* § 1715. The court will defer ordering submission of those pleadings until it resolves the service and joinder issues the court has raised.

### V. Conclusion

The court denies Lippelmann Partners, LLC's Motion for Summary Judgment (Doc. 104) because Lippelmann Partners hasn't carried its burden to show that there are no remaining issues of fact over how the court should disburse either the pre-June 1, 2022 deposits or the post-June 1, 2022 deposits. Because one potential claimant hasn't received proper service and another isn't

party to this action, the court orders plaintiff to submit supplemental briefing within 21 days on these issues.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Lippelmann Partners, LLC's Motion for Summary Judgment (Doc. 104) is denied.

**IT IS FURTHER ORDERED THAT** plaintiff Elk Energy Holdings, LLC submit a supplemental brief within 21 days of this Order addressing the issues identified above.

**IT IS SO ORDERED.**

Dated this 16th day of October 2025, at Kansas City, Kansas.

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**